# Saunders *versus* Quigg et al.

1. Where an insolvent fails in obtaining his discharge as an insolvent debtor, and voluntarily surrenders himself to the warden of the jail of the county; he complies with the alternative condition of his bond; "that he shall surrender himself to the jail of the county," and, though the warden refuses to receive him, his bond is void and his sureties are discharged.

2. The obligee in an insolvent's bond can not recover in an action thereon by showing that the *jurat* to the insolvent's petition was irregular and improper after the bond has been accepted and has answered its purpose.

April 8th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term, 1886, No. 122.

Debt by Oscar P. Saunders and Sarah J. his wife, in right

of said wife against John Scott, Andrew Gailey and William Quigg. Pending the suit Sarah J. Saunders died, and her executor, Oscar P. Saunders, was substituted.

The plaintiff declared upon the bond of Quigg in which Scott and Gailey were sureties, given by Quigg for his appearance to file his petition for the benefit of the insolvent laws.

The declaration contained two counts as follows:

First count sets forth the bond and its conditions, and for a breach declares " that the said William Quigg did not appear at the then next term of the Court of Common Pleas of the said County, and then and there present his petition for the benefit of the insolvent laws of this Commonwealth, and comply with all the requisitions of the said laws."

Second count sets forth the bond and its conditions and for a breach avers " that the said William Quigg failed in obtaining his discharge as an insolvent debtor; that his said petition was dismissed and that he did not surrender himself to the jail of the said county."

Defendants pleaded *non est factum*, payment and performance of the conditions of the bond, and specially the performance of each condition of the bond, to wit: " That William Quigg did appear at the next ensuing term of the said Court of Common Pleas, and did present his petition for the benefit of the insolvent laws of the Commonwealth of Pennsylvania, and did comply with all the requisitions of said law . . . . . and voluntarily surrendered himself to and into the jail of the said county," etc.

Plaintiff joined issue on the first plea, replied *non solverunt* to the second, and to the third plea replied " that defendants did not perform the conditions of said bond sued and declared on in the manner and form in said plea alleged."

The following are the facts of the case as they appeared on the trial before LUDLOW, P. J.

In March, 1883, Sarah J. Saunders obtained a judgment for $2,300.24, against William Quigg, her step-father and guardian. A *fieri facias* was duly issued, and upon the claim of ownership by another as to nearly all the goods levied upon, a *capias ad satisfaciendum* was issued, and Quigg taken into custody of the sheriff. He immediately applied for the benefit of the insolvent laws, and the bond in suit was given.

The following is the condition in said bond.

Now the condition of this obligation is such that if the said William Quigg shall appear at the next term of the Court of Common Pleas of the said county and then and there present his petition for the benefit of the insolvent laws of this Commonwealth, and comply with all the requisitions of the said

law, and abide all the orders of the said court in that behalf, or in default thereof, and if he fail in obtaining his discharge as an insolvent debtor, that he shall surrender himself to the jail of the said county, then this obligation to be void, otherwise to be and remain in full force and virtue.

Quigg afterwards filed his final petition, and after various adjournments his hearing was had on February 29th, 1884, and his prayer for a discharge refused.

The validity of his petition was questioned at the hearing, but not decided. Quigg then offered to surrender himself to the sheriff, but no actual surrender was made, the sheriff telling him he should have a commitment or order of court, and that the jailer would not receive him without one or the other. · Later in the day Quigg went with his friends and one of his bondsmen to the jail, and handed the following to Mr. Perkins the keeper of the jail.

"*In re* Insolvency of William Quigg, C. P. 3, M. T. 1880. No. 213. Application for discharge as an insolvent. Discharge refused this day by Judge FINLETTER, (February 29th, 1884). The above-named *William Quigg voluntarily surrenders himself* in the above matter *to the jail of the City and County* of Philadelphia, this same day February 29th, 1884."

"WILLIAM QUIGG."

Mr. Perkins asked him if he had any commitment, certificate or order of court, and was told he had not, whereupon Mr. Perkins informed him that he could not hold or keep him on the paper he produced, and Quigg left the jail.

The plaintiff maintained that the petition presented was not in accordance with the provisions of the Act of Assembly, in that the oath to it was not properly· administered, and that the surrender was not complete or of the nature contemplated by the Act of Assembly, because it did not place the insolvent back in custody as he was when· he filed his first petition as an insolvent.

The plaintiff presented the following points:

1. The alleged insolvent having failed to present his petition in accordance with the Act of Assembly, your verdict must be for the plaintiff. Refused.

2. The alleged insolvent having failed to perform the conditions of his bond, your verdict must be for the plaintiff. Refused.

The defendant presented the following points.

1. The evidence showing that the insolvent Quigg's application for discharge, after due hearing, was refused on the 29th February, 1884, and that he on the same day surrendered himself to the jail of this county, and that afterwards on the same day he was released, discharged or liberated

[Saunders *v.* Quigg et al.]

therefrom by the jailer, the sureties in this action are discharged and your verdict should be for the defendants. Affirmed.

2. Under the evidence and the law in this case, your verdict should be for the defendants.

Affirmed, if the jury believe Quigg went to the jail, with the paper he has produced and surrendered himself in good faith.

The court charged the jury as follows:

If you believe Quigg went to the jail on the day his petition was refused, in good faith, and handed to the keeper the paper in evidence (and it is not denied that all this was done), then the surrender was complete, and your verdict should be for the defendants. The proceeding is a rare one, though it was very common forty-five years ago. Had the keeper of the prison been an older man he would have known the surrender was valid, and would have kept the insolvent.

Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ, assigning for error the answer of the court to the points of the plaintiff and of the defendant, and the general charge of the court.

*Bradbury Bedell*, for plaintiff in error.—The prothonotary cannot administer to the insolvent the oath to his petition: Act April 14th, 1834, P. L. 355, §§ 76, 77; Act March 22d, 1859, Id., 194, § 1; Act April 28th, 1868, Id., 1150, § 1; 2 Purdon's Digest, 1379, § 72, VI. and note, and § 73; Detweiler *v.* Casselberry, 5 W. & S., 179; 1 Tr. & H. Prac., § 1423.

The sureties of Quigg took him from the sheriff who held him in custody by virtue of a *capias ad satisfaciendum.* Quigg offered to surrender himself to the jailer without any warrant, order or authority.

This was not a compliance with the bond, nor a lawful surrender: Mason *v.* Benson, 9 Watts, 257; Heilner *v.* Bast, 1 P. & W., 287; Mullen *v.* Wallace, 2 Grant, 389; Kelly *v.* Stepney, 4 Watts, 69; Wolfram *v.* Strickhouser, 1 W. & S., 379; Gallagher *v.* Kennedy, 2 Rawle, 162.

*Aaron Thompson*, for defendant in error.—The prothonotary's powers to administer oaths is given by statute, Purdon, p. 1182, and our prothonotary is under the new constitution prothonotary of the four Philadelphia courts, and so enlarged and onerous are his duties that even by the Act of Assembly of 28th April, 1868, P. L., 1150, he is allowed to appoint one or more assistants as commissioners in bail to administer oaths in his absence; and that his deputy has also similar power: see Drumhells *v.* Murmawe, 9 Pa. St., 19; Commonwealth *v.*

[Saunders *v.* Quigg et al.]

Greason, 5 S. & R., 333; Reigart *v.* McGrath, 16 Id., 65; Commonwealth *v.* Finney, 17 Id., 282; 29 Legal, Int., 165; Sheppard's case, 2 Brewster, 1.

No exception was taken by the plaintiff to the admission of the insolvency record in the court below at the trial of the case. Nor could it have been questioned by any parol evidence: Gallagher *v.* Kennedy, 4 Rawle, 163; Heilner *v.* Bast, 1 P. & W., 267.

" The privilege which the insolvent has of releasing his security by going to jail cannot be taken away from him, and to commit him by way of compelling him to surrender himself involves the absurdity of forcing him to be a volunteer."

" And it matters not after the surety is once relieved from his liability by a surrender whether the debtor remains in prison, escapes from custody by climbing the wall, or is discharged by the blunder of the officers. The surrender of the debtor discharged the surety from all liability."

In 3 Philadelphia Reports, Rawlor *v.* Bennett, p. 343, Judge SHARSWOOD held that a surrender by the debtor to the sheriff was a discharge of the sureties.

In Heilnar *v.* Bash, 1 P. & W., p. 267 (year 1830), the court say on the day of the hearing the insolvent must surrender himself to save his bond. It requires no order of the court for that purpose. It is the express condition of the bond that he will surrender himself. After the refusal to discharge he had one of two courses, either to surrender himself to prison or forfeit his bond. See also Frick *v.* Kitchen, 4 Watts and Sergt. 30; Mullen *v.* Wallace, 2 Grant, 389; Kelly *v.* Stepney, 4 Watts, 69; Wolfram *v.* Strickhouser, 1 W. & S., 379; Bartholomew *v.* Bartholomew, 14 Wr., 200; McGovern *v.* Hoesback, 3 P. F. S., 180.

The opinion of the court was delivered April 19th, 1886.

PER CURIAM: The surrender by the insolvent of himself to jail was a valid surrender. It was a strict compliance with the alternative condition of the bond. No objection was made to the sufficiency of the *jurat* when the petition was presented, and no motion at any time was made to dismiss the petition by reason of any alleged defect therein. After it has answered its purpose, and the obligee in the bond, based on the validity of the petition, has accepted the bond and brought suit thereon, it is too late for such an obligee to recover by showing the *jurat* to the petition was not properly administered.

Judgment affirmed.