## Marks et al. *versus* The Drovers' National Bank of Union Stock Yard.

1. Upon the refusal of the court to discharge an insolvent debtor, who had been arrested on a warrant of arrest issued by one of the judges of said court, it is not necessary that the judge who issued the warrant of arrest should issue the commitment to the county jail. It is the court that issues the commitment in such cases.

2. Where the court refuses to discharge an insolvent debtor and he voluntarily surrenders himself to the warden of the jail of the county, he complies with the alternative condition of his bond; "that he shall surrender himself to the jail of the county," and though the warden refuses to receive him without a commitment, his bond is void and his sureties are discharged.

3. Saunders *v.* Quigg et al., 2 Amerman, 546, followed.

October 26th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J. absent.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county :* Of October Term, 1886, No. 47.

Debt on an insolvent bond by The Drovers' National Bank of Union Stock Yards, Lake, state of Illinois, against Simon Marks, John Herchenroether and Gustav Kahn.

The plaintiffs declared in their narr that the defendants were indebted to them in the sum of $18,000 upon a bond dated 22d May, 1884, conditioned that Simon Marks, one of the defendants, would take the benefit of the insolvent laws, and that if he failed he would surrender himself to jail; that Marks failed to surrender himself to jail, and that therefore the bond was forfeited. Pleas, that Mark had duly presented his petition for the benefit of the insolvent laws, that he had prosecuted his petition with due diligence, &c., and that upon

[Marks *v.* Drovers' Nat. Bank.]

the court refusing his discharge he had surrendered himself to jail.

Plaintiffs gave in evidence their judgment, the arrest of Marks, the bond and the order of the court refusing his discharge. Defendants gave in evidence the proceedings of Marks for the benefit of the insolvent laws, the order of court refusing his discharge, on the ground of the concealment of part of his estate, &c.; that Marks was in court when his discharge was refused; that he thereupon offered to surrender himself and prayed the court to commit him for trial for fraudulent insolvency; the court's refusal to commit him and the voluntary surrender of Marks to the jail, and the refusal of the jailor to receive him.

During the trial the plaintiffs proposed to prove by the witness (Edward Tilden) that being in Canada last July—1885—he there saw Simon Marks settled in business, and that he made inquiry as to how long Mr. Marks had been a resident of Toronto, and was informed that he had come there the September or October of 1884 preceding, and had been there ever since.

Objected to as incompetent, irrelevant and hearsay.

By plaintiff's counsel: I will separate the offer, and offer first, to show that the witness saw Mr. Marks in Toronto last July running a butcher shop.

Objection renewed.

Objection overruled and bill sealed for defendants. (First assignment of error.)

Plaintiff offered the testimony of John Thompson, as follows:

Q. Did you talk to him (Marks) about how long he had been there?

Objected to as incompetent, irrelevant and hearsay, and on the ground that a conversation with Simon Marks, in August last, has nothing to do with these parties now.

Plaintiff's counsel proposes to show by the witness on the stand that Marks has been away since he left here in 1884, that he told the witness the route by which he had come to Toronto, and when he had come.

Objection renewed.

Plaintiff's counsel proposes to show by the witness on the stand that Marks told him he had got into trouble here, that he had left and gone to Baltimore, and after staying there, perhaps a day, he had come to the conclusion that he had better go across the border, which he had done, and had set up a butcher shop.

Objection renewed.

Objection overruled and bill sealed for the defendants. (Second assignment of error.)

The defendant presented the following point: That if the jury find from the evidence that the defendant, Marks, filed his petition for the benefit of the insolvent laws of this Commonwealth and obeyed all the lawful orders of the court and duly prosecuted the same to a final hearing on September 6th, 1884, and that Marks was present in said court at said final hearing, and through his counsel asked the court to take further proceedings in said cause, as required by law, and the said court refused to take further proceeding in said cause and refused to make an order committing said Marks to jail, as requested by his counsel, and that the counsel of the plaintiff acquiesced in the action of the court, and that thereupon the said Marks went to the jail of Allegheny county and surrendered himself to the jailer and asked to be put in jail—this was a full compliance with the condition of the bond in suit, and plaintiffs are not entitled to recover.

Answer: We refuse this point, because the law requires the order for commitment to be made by the judge who issued the warrant, and an application to the court in the absence of the judge who issued the warrant of arrest, and a refusal of such court to grant the commitment, followed by the surrender of the person to the jailer, is not a sufficient compliance with the law to discharge the bail; the jury are therefore instructed that under all the evidence in the case their verdict should be in favor of the plaintiffs for the amount of their claim. (Third assignment of error.)

Verdict for the plaintiff in the sum of $9,573.25, being the amount of the judgment of the plaintiffs against Simon Marks, and judgment thereon, whereupon the defendants took this writ and filed the above assignments of error.

*Josiah Cohen* and *Levi Bird Duff* (*L. B. D. Reese* with them), for plaintiffs in error.—The issue in this case was whether Marks had, within the time limited, made application for the benefit of the insolvent law, and had prosecuted his petition therefor with due diligence, and having failed to obtain his discharge, had surrendered himself to jail on the day of his so failing. The insolvent proceeding came to an end on September 6th, 1884, according to the pleadings. How, then, could the evidence go beyond that date, and how was the fact that Marks was, in July, 1885, residing and doing business in Canada, relevant to the issue? And what light could the declarations of the people living in Canada throw upon the issue?

In *ex parte*, Abbott, 18th of October, 1823, reported in the appendix to Ingraham on Insolvency, page 373, it was held:

1. That upon the refusal of the debtor's discharge, "on account of a strong presumption of fraud in concealing a part of

his property," the court was bound to give the debtor an opportunity to make an application to be committed for trial under the Act of 1816.

2. That upon such application being made by the debtor, it was the duty of the court to commit him for trial.

3. That after the commitment it was the debtor's business only "patiently to wait and quietly to hope" until he was called upon to answer the indictment. If he did all that was incumbent upon him to do, he was not to suffer by the omission of others.

4. That having been committed and no indictment having been found against him, he was entitled to be discharged.

The Act of 1816, and the fifth section of the Act of 1820, were re-enacted almost word for word by the Act of 16th of June, 1836, and again in the Penal Code of 1860, and are found in Purd. Dig., 900.

The jailer and the Court below were of the opinion that an insolvent debtor cannot surrender himself to jail, that he must be committed by the judge who issued the original warrant of arrest; but this is manifest error. A commitment by a judge, or the court, or any authority, would not be a compliance with the condition of the bond in suit. A forfeiture of the bond can be avoided only by a voluntary surrender: Heilner v. Bast, 1 P. & W., 267. And a voluntary surrender saves the bond, though the debtor subsequently escapes by the blunder of the jailer: Mullen v. Wallace, 2 Grant, 389. But it is unnecessary now to further discuss this question: Saunders' Executors v. Quigg et al., 2 Amerman, 546; a case decided in this court, since this writ of error was taken, rules this case.

S. A. McClung (W. H. McClung and John Dalzell with him), for defendant in error.—The insolvency hearing was either not completed when the alleged surrender was made, or it was absolutely and legally completed by the order of September 6th, 1884, refusing Marks his discharge.

There is no middle ground. If it was incomplete, then Marks had no right to surrender himself, and a failure to press the hearing to a conclusion is a forfeiture of the bond. The statute requires of the petitioner an active compliance with its provision: McDonough case, 1 Wright, 275.

It is only at the conclusion of the insolvent proceedings that a surrender can be made in satisfaction of the bond: Wolfram v. Strickhouser, 1 W. & S., 379.

"He (the petitioner) is the actor and the only one to set in motion the machinery of the law, which is to result in his discharge. The creditor performs no part of it, is not bound to appear, etc." "The debtor is the only one who sets them

(the provisions of the law) in motion and keeps them moving." "No construction of the law can be right which postpones the discharge indefinitely, and at the same time prevents his return into the power of his creditor:" Opinion of Agnew, J., in Bartholomew *v.* Bartholomew, 14 Wright, 200.

If they adopt the only remaining alternative they must assume that the order of September 6th, 1884, refusing to discharge Marks was a final and legal one, and cease their attempt to have it reviewed in this collateral proceeding.

The judgment of the court having jurisdiction of the case unreversed and unappealed from, is the law of that case.

We submit that the jailer has a right to have some paper authority when he imprisons an insolvent. Whether this be a commitment or an order of some sort from the court, as the court below thought was proper, or a paper signed and filed by the party himself, as was offered in the case of Saunders *v.* Quigg, 2 Amerman, 546, matters not. Neither was offered here, and hence the defence was admittedly not made out. The jailer here put the case in a nutshell, when he told Marks' attorney that if he were to take men in without better identification than he offered, he would have the jail full of tramps in a week.

Mr. Justice Green delivered the opinion of the court, November 17th, 1886.

There are three assignments of error in this case and we must sustain them all. The action was debt upon an insolvent bond, the breach alleged being that the debtor upon being refused his discharge failed to surrender himself to jail. The only question therefore was whether the bond had been forfeited by breach of condition. In trying that question it was of no sort of consequence that the debtor was seen in Canada in 1885, or that he was following any business there, or that he had gone to Baltimore and thence to Canada. The offers of testimony to prove these facts were entirely irrelevant and should have been rejected.

The defendants' point fairly presented all the facts which, if found by the jury, established a full compliance with the condition of the bond, and it should have been affirmed as it stood. As a legal proposition upon the hypothetical facts stated it was undoubtedly true, and there was ample testimony in support of the facts. The point was refused "because the law requires the order for commitment to be made by the judge who issued the warrant, and an application to the court in the absence of the judge who issued the warrant of arrest and a refusal of such court to grant the commitment, followed by the surrender of the person to the jailer is not a sufficient

[Marks v. Drovers' Nat. Bank.]

compliance with the law to discharge the bail." We can not possibly sustain such a proposition as this. There is no such provision in the law, and it would be most astonishing if there were. For judges die, are sick, or absent, or go out of office, or may be prevented in many ways from being personally present in court at all times when business is being transacted, but the court never dies. Its business proceeds, its orders are made, its official transactions are conducted without regard to the personality of the individual who exercises its functions. In the present case the law which directs the proceedings says, " If it shall appear to the court upon the hearing of any petition in insolvency either by the examination of the petitioner or other evidence that there is just ground to believe either &c., &c., &c., in every such case it shall be the duty of the court to commit such person for trial: " Purd. Dig., 900, pl., 50. It is difficult for us to understand why, when the debtor's discharge was refused, the court did not make the order of commitment as directed by the law. But though that order was not made the debtor, if the testimony is believed, and it is without contradiction, did all that it was possible for him to do in order to surrender himself. It was proved, and not denied, that he went to the jail and declared to the jailer that he was there to surrender himself to jail. The proceeding was explained to the jailer, and it was insisted that he should take the debtor and imprison him, but he refused to do this because no order of commitment was presented to him. It can not be that an insolvent debtor who has given bond for his compliance with the insolvent laws, shall be deprived of his right to perform the condition of his bond either by the mistake of a court or the jailer. When he has literally done all that it is in his power to do in compliance with the law, the condition of the bond is performed. It was not in his power to compel the court to issue an order of commitment, nor was it in his power to put himself in prison when the jailer refused to receive him. All that the bond requires is that he shall surrender himself to jail, and this it is testified, he did literally. He was under no obligation to remove the proceeding to a court of review when the court which heard his case refused him his discharge. By the very condition of his bond if he failed to obtain his discharge he was privileged to surrender himself to jail in discharge of his bail, and this it is claimed is precisely what he did. Nor was any order of commitment by the court essential to the exercise of his right of surrender. In Heilner v. Bast, 1 Pa. Rep., on p. 270, we said: " On the refusal of the court to discharge the petitioner it was his duty to surrender himself to prison in discharge of his bail, and this without any order of the court for that purpose. It is the ex-

press condition of the bond that he will surrender *himself* in case he shall not comply with all things required by law to procure his discharge." In Saunders *v.* Quigg, 112 P. S. R., 546, we held that where an insolvent fails in obtaining his discharge as an insolvent debtor and voluntarily surrenders himself to the jail of the county, he complies with the alternative condition of his bond " that he shall surrender himself to the jail of the county," and though the warden refuses to receive him his bond is void and his sureties are discharged. The fact that Saunders declared in writing that he surrendered himself, was not at all essential either to the validity or the efficacy of his surrender. It was his actual surrender that constituted performance of the alternative condition of the bond and discharged his bail. The point presented by the defendants assumed the fact of such a surrender, and there was ample evidence, if believed by the jury, to sustain the assumption, but the learned court below refused the point, and gave a binding instruction to the jury that under all the evidence in the case their verdict should be in favor of the plaintiffs. In this there was error. In our judgment the point should have been affirmed, and the jury should have been directed that if they believed the testimony submitted by the defendants in support of the facts stated in the point, their verdict should be rendered in favor of the defendants.

The judgment reversed and a *venire facias de novo* awarded.