148    517
f 31 SC 183

## Greenwaldt, Executrix, v. Kraus and Betz, Appellants.

*Insolvent laws—Bond—Suit against surety—Failure of petitioner to appear—Subsequent surrender—Technicalities—Growth of the law.*

Where a petitioner for the benefit of the insolvent laws failed to appear on the day fixed for the hearing of the petition until after twelve o'clock, the hour at which the court adjourned, but subsequently came into court, and finding that the court had adjourned, proceeded at once to the county prison and surrendered himself to the keeper thereof in relief of his surety, the condition of the bond was complied with and there could be no recovery thereon against the surety.

A comparison of the earlier with the later cases upon this subject may show a mellowing of the law, and that the latter pay less heed to technicalities than the former. This change runs all through our laws, civil and criminal. The law does not now wholly disregard technicalities, but it shrinks from impaling a man on sharp points which have no relation to the justice of the cause.

## 518 GREENWALDT v. KRAUS AND BETZ, Appellants.

*Petition for benefit of insolvent laws—Insufficiency of—Too late to raise objection to, in suit on bond.*

While a petition for the benefit of the insolvent laws, which had appended to it a schedule of creditors containing the names of creditors and the amounts due but not the nature and character of the debts, is open to criticism as not strictly complying with the act of assembly, it is too late to raise such objection in a suit on the bond subsequently given, and which has been accepted by the obligee.

*Juridical day—Practice—Adjournment of court—Subsequent appearance of party.*

It may be conceded that a juridical day in Philadelphia county ends as to a party to a proceeding in the court, whose duty it is to be present, when he is called and fails to appear. The judge is not bound to wait until three o'clock, or any other hour, before he may proceed to visit upon a party the consequences of his default. At the same time it would appear to be a harsh proceeding to deny a party an opportunity of being heard when he has in good faith attempted to comply with the law, and his default appears to have been the result of a misunderstanding upon the part of counsel as to the time of hearing.

*Contradicting record—Parol evidence—Agreement of counsel.*

An offer to prove an understanding between petitioner's counsel and a trial judge that a hearing of a petition for the benefit of the insolvent laws should be postponed for one week, was properly rejected upon the ground that it tended to contradict the record, which showed that the case was called at the earlier date, and the petition dismissed and proceedings quashed.

Argued March 24, 1892. Appeal, No. 199, July T., 1891, by defendants, Constantine Kraus and Max M. Betz, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1884, No. 311, on verdict for plaintiff, Hetty Greenwaldt, executrix of Lewis Greenwaldt, deceased. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Debt on an insolvent's bond given by Kraus, with Betz as surety.

Lewis Greenwaldt secured a judgment for $4,000 against Kraus in 1886. Defendant presented a petition in August of that year for the benefit of the insolvent laws, with a bond in the sum of $8,000 in which Betz was surety. The petition was set down for hearing for October 16, and upon that day, the petitioner not having appeared at twelve o'clock, the court at that hour adjourned, having first dismissed the petition and quashed the proceedings. Subsequently, petitioner having been sent for appeared in court, and finding that the court

had adjourned, by advice of his counsel, went to the county jail and surrendered himself to the keeper thereof. On October 18 a summons in debt was issued upon the bond. An affidavit of defence was filed by Betz and a rule for judgment for insufficiency of the affidavit made absolute by the court. This action was reversed by the Supreme Court on appeal, (Betz v. Greenwaldt, 7 Cent. Rep. 856 ; 8 Atl. Rep. 852,) and a procedendo awarded.

The case came on for trial before GORDON, J., before whom the plaintiff offered the bond and record in the case and rested. The defendant offered to show by John H. Fow, Esq., that, as counsel for the petitioner, he called upon Judge GORDON, and that October 23 was agreed upon as a time for hearing the petition.

" The Court: The facts can only be established by the record, and the records offered in evidence by the plaintiff show that the case was fixed for October 16. I will not permit you to show that counsel had some conversation with the court in reference to that matter. Mr. Fow has attempted to show some conversations in which the court agreed to continue this matter, and I will not be confronted by a witness attempting to contradict the record." [1]

Defendant then offered to show by the same witness that a notice was served upon the plaintiff's attorney that the hearing in this case had been fixed for October 23. The offer was objected to and excluded by the court. [2, 3]

Edward A. Anderson, Esq., being on the stand, was asked :

" Q. You are a member of the Philadelphia bar ?

" A. I am ; yes, sir.

" Q. Were you in court on the 16th day of October, 1886 ?

" A. I was.

" Q. When this case was called?

" A. Yes, sir.

" Q. Will you please tell us what happened ?

" A. The case was opened. I think Mr. Bedell, if my memory is right, got up and asked to have the names of the parties called, and Judge GORDON said he thought this case was continued.

" [Objection by Mr. Bedell.]

" The Court : I will strike out that testimony.

" [Exception for defendants.] " [4]

The defendant submitted the following points:

" 1. That if the jury find from the evidence that the day appointed for the hearing of this insolvent was October 23, 1886, and not October 16, 1886, then the verdict should be for the defendant. *Answer:* Refused. [6]

" 2. That if the jury find from the evidence that the petitioner came to the court room October 16, 1886, a few minutes after 12 o'clock noon, and during the regular hours for holding court, in order to answer the case, and finding that the court had adjourned immediately surrendered himself to the sheriff, and afterwards, during the same day, surrendered himself to the jail of the county, and there remained until duly discharged by the court, the verdict should be for the defendant. *Answer:* Refused. [7]

" 3. The evidence showing that the insolvent Kraus's petition for discharge under the insolvent laws having been quashed on the sixteenth day of October, 1886, and the evidence further showing that on the same day the defendant Kraus surrendered himself to the jailer of Philadelphia county, and was taken into custody by the jailer, the surety, Max M. Betz, in this case is discharged and your verdict should be for the defendants. *Answer:* Refused. [8]

" 4. If the jury find from the evidence that Constantine Kraus, the insolvent, in relief of his surety's liability upon the bond did surrender himself to the jailer of Philadelphia county, and was accepted as a prisoner by him, this will be a discharge of Max M. Betz, the surety, upon the insolvent's bond, and in this case your verdict should be for the defendant, Max M. Betz. *Answer:* Refused. [9]

" 5. Under the evidence and law in this case your verdict should be for the defendants. *Answer:* Refused. " [10]

The court charged the jury as follows:

" As you have heard by the discussion that has occurred, this case has resolved itself into a simple point of law: whether the facts which the defendant proved are in law a good defence to this action. As this question must be finally passed upon by all the members of this court, I think it better to instruct you to find in this instance for the plaintiff for the amount claimed by him, and then to find specially the facts to enable

the court in banc (all the court) to pass upon the question. I instruct you, therefore, to find for the plaintiff for $5,315.12, and find also as follows: The jury find the following facts: That the defendant Kraus, after the adjournment of court on the sixteenth day of October, 1886, did on the same day thereupon voluntarily surrender himself to the county jail of said county." [5]

Verdict accordingly. The case having been subsequently argued before the court in banc on defendant's motion for a new trial and for judgment, and on the plaintiff's motion for judgment on the verdict, the court entered judgment for the plaintiff. Defendants thereupon took this appeal.

*Errors assigned* were (1–4) the rulings on evidence above indicated, quoting the bills of exceptions; (5) the charge of the court, quoting it; (6–10) refusal of defendants' points, quoting the points; (11) entry of judgment against the defendants.

*F. Carroll Brewster, Lewin W. Barringer* with him, for appellants.—The offer to prove that October 23 was the day fixed for the hearing, which for present purposes it must be assumed was true, was within defendants' rights: Mercer v. Watson, 9 L. Bar, 53; Vincent v. Huff, 4 S. & R. 298; Beale v. Com., 7 Watts, 183; 2 Taylor on Evidence, sec. 1038.

The insolvent in this case did everything he possibly could to comply strictly with the insolvent law of the state. There was no default upon his part: Saunders v. Perkins, 140 Pa. 102; Tracy v. Kelly, 5 Watts, 346; Mullen v. Wallace, 2 Grant, 389; Saunders v. Quigg, 112 Pa. 546; Marks v. Bank, 114 Pa. 490.

*Bradbury Bedell, Frederick B. Vogel* with him, for appellee.

The bond was forfeited because petitioner never filed a final petition for discharge in accordance with the provisions of the act of assembly: Baker's Case, 1 Binn. 462; Wolfram v. Strickhouser, 1 W. & S. 379; Detwiler v. Casselberry, 5 W. & S. 179; Forman v. Drew, 4 B. & C. 15; Wood v. Jowett, 4 B. & C. 20; Reeves v. Lambert, 4 B. & C. 215; Taylor v. Williams, 20 Johns. 21; Nias v. Nicholson, 2 C. & P. 120.

The bond was forfeited because the insolvent did not appear as required by the bond and the law. The record of the court cannot be attacked in a collateral proceeding: Hoffman v.

Coster, 2 Wharton, 453 ; Heilner v. Bast, 1 P. & W. 267 ; Sheets v. Hawk, 14 S. & R. 173.

. It has been repeatedly stated by this court that an appearance in court on the insolvent day is an absolute necessity in order to relieve the bondsman. It is admitted that October 16 was the insolvent day for the court in September term, 1886, that being the term following the filing of the bond: Kelly v. Stepney, 4 Watts, 69 ; Wolfram v. Strickhouser, supra ; Detwiler v. Casselberry, supra ; Smith v. Barker, 6 Watts, 508.

OPINION BY MR. CHIEF JUSTICE PAXSON, April 18, 1892:

The suit was brought in the court below upon an insolvent bond. The jury rendered the following verdict : " Verdict for plaintiff for $5,315.12, and the jury find the following facts : That defendant, Kraus, after the adjournment of the court on October 16, 1886, did, on the same day, thereupon voluntarily surrender himself to the county jail of said county, with the point of law reserved by the court, whether the defendant is liable upon the bond in suit." The judgment entered was as follows : " July 17, 1891, judgment for plaintiff on verdict. Rule for new trial and judgment for defendant discharged."

It appears that the insolvent list was set down for hearing in the court below for October 16, 1886, and that upon that day the insolvent's petition had been dismissed and the proceedings quashed. There also appears to have been a misunderstanding on the part of the counsel for the insolvent as to the day of the hearing ; that the insolvent's counsel, being unable by reason of other engagements to be present in court on October 16, had obtained permission to be heard on October 23, and had so notified the counsel opposing the petitioner's discharge ; that the case was called on said October 16, in the absence of the petitioner's counsel, whereupon a member of the bar, representing the latter, sent immediately for Constantine Kraus, the insolvent, to come into court ; that Kraus arrived at the court room at about ten minutes after twelve o'clock, and, finding that the court had adjourned, proceded at once to the county prison and surrendered himself to the keeper thereof, in relief of his surety.

Upon the trial below, the defendant offered to prove an understanding between the petitioner's counsel and the trial

judge, that the hearing of the cause should be postponed until October 23. See 1st, 2d, 3d and 4th specifications of error. This evidence was rejected by the court below upon the ground that it tended to contradict the record. We cannot say that this was technical error. The evidence having been excluded there was nothing before the court to show that the day appointed for the hearing was October 23, 1886, and not October 16, 1886, and it was not error to refuse the defendant's 1st point.

The defendant's 2d point, however, presented a more serious question. The point was as follows : " That if the jury find from the evidence that the petitioner came to the court room October 16, 1886, a few minutes after twelve o'clock noon, and during the regular hours for holding court in order to answer the case, and, finding that the court had adjourned, immediately surrendered himself to the sheriff, and afterwards, during the same day, surrendered himself to the jail of the county, and there remained until duly discharged by the court, the verdict should be for the defendant." The answer of the court was as follows : " Defendant's points all refused."

We may concede that a juridical day in Philadelphia county ends as to a party to a proceeding in the court, whose duty it is to be present, when he is called and fails to appear. The judge is not bound to wait until three o'clock, or any other hour, before he may proceed to visit upon a party the consequences of his default. At the same time, from our standpoint, it appears to be a harsh proceeding to deny a party an opportunity of being heard, who has in good faith attempted to comply with the law, and whose default would appear to have been the result of a misunderstanding upon the part of the counsel as to the time of hearing. We pass that, however, and come to the more important question presented by the defendant's second point.

The condition of the insolvent bond, which the appellant signed as surety, is as follows : " Now the condition of this bond is such that if the said Constantine Kraus shall appear at the next term of the court of common pleas of said county, and then and there present his petition for the benefit of the insolvent laws of this commonwealth, and comply with all the requisites of said law, and abide all the orders of the said court,

in that behalf, or, in default thereof, and if he fail in obtaining his discharge as an insolvent debtor, that he shall surrender himself to the jail of the said county, then this obligation to be void, otherwise to remain in full force and virtue."

The effect of this condition of the bond has been the subject of consideration and discussion in a number of cases, some of them recent. In Mullen v. Wallace, 2 Grant's Cases, 389, it was held that an offer by an applicant for the benefit of the insolvent laws, in open court, to surrender himself, and afterwards, on the same day, going to and remaining in prison, operated as a discharge of his surety, and his subsequent release from prison did not revive the liability of the surety. It was said by Justice BLACK: " The condition of the bond is, that the petitioner shall surrender himself, and he complies with it, in letter and spirit, if he goes to jail and gives himself up. The court may order him into custody only in one event, and that is, when they find reason to believe him guilty of fraud. When the petition is dismissed for noncompliance with some order, as for instance, when he does not appear at the time appointed, or fails to give his creditors notice, the court have no power to commit him. To do so would be an unwarrantable interference between the parties, for the debtor has a right to choose whether he will let the creditor have his body or his bond. Any order the court could make on the subject would be mere brutum fulmen. The privilege which the insolvent has, of relieving his surety by going to jail, cannot be taken away from him ; and to commit him, by way of compelling him to surrender himself, involves the absurdity of forcing him to be a volunteer.

" The practice which prevails at some places, of noting on the record that the debtor has appeared and expressed his willingness to surrender himself in discharge of his surety, may be a convenient one, and therefore ought to be encouraged, but the law does not make it necessary; such a record, not followed by an actual and voluntary surrender, would leave the bond in full force, and a surrender, though not recorded, would be a perfect performance of the condition. When the party surrenders himself, he is in custody under the writ on which he was first arrested. He has no right to be discharged again on giving a new bond, though it has been held that the

surety is estopped from denying its legality. But it matters not to the surety in the first bond, after he is once relieved from his liability by a surrender, whether the debtor remains in prison, or escapes from custody by climbing over the wall, or is discharged by the blunder of an officer. The surrender puts him back again where he was when the bond was given, and the creditor has all appliances and means of keeping him there, which he had at first."

In Saunders v. Quigg, 112 Pa. 546, it was held that, where an insolvent fails in obtaining his discharge as an insolvent debtor, and voluntarily surrenders himself to the warden of the jail of the county, he complies with the alternative condition of his bond " that he shall surrender himself to the jail of the county," and, though the warden refuses to receive him, his sureties are discharged. The same doctrine was emphatically asserted in Marks v. The Drover's National Bank, 114 Pa. 490. In that case, as in Saunders v. Quigg, the insolvent surrendered himself to the county prison without a commitment by the court. It was said by our brother GREEN: " But though that order (commitment) was not made, the debtor, if the testimony is believed, and it is without contradiction, did all that it was possible for him to do in order to surrender himself. It was proved, and not denied, that he went to the jail and declared to the jailer that he was there to surrender himself to jail. The proceeding was explained to the jailer, and it was insisted that he should take the debtor and imprison him, but he refused to do this, because no order of commitment was presented to him. It cannot be that an insolvent debtor, who has given bond for his compliance with the insolvent laws, shall be deprived of his right to perform the condition of his bond either by the mistake of the court, or the jailer. When he has literally done all that is in his power to do in compliance with the law, the condition of the bond is performed." In Tracy v. Kelly, 5 Watts, 346, it was held that the bail of an insolvent is entitled to every part of the condition of the bond prescribed by the act of assembly, and if it do not contain the alternative of a procurement of a discharge, or a surrender to jail, no recovery can be had upon it.

Kelly v. Stepney, 4 Watts, 69, was cited as in opposition to the foregoing views. In that case the bail arrested the pe-

titioner two weeks or more before the day fixed for the hearing; the petitioner got out of jail under the bread act on October 4. The hearing was fixed for the 7th of the same month; the petitioner did not appear, and never surrendered himself. The court held that the bail could not surrender the principal, and that a surrender under the condition of the bond is evidently not to be before hearing.

In Detwiler v. Casselberry, 5 W. & S. 179, the insolvent presented his petition, April 21, 1840. His petition was dismissed June 25, 1840, because sworn to before the prothonotary, who had no power to administer the oath. His bail surrendered him June 25, 1840. The court held that the want of a proper oath was a forfeiture of the bond. In Wolfram v. Strickhouser, 1 W. & S. 379, the insolvent entered into a bond August 16, 1838, to appear at the next term of court, and then and there present his petition for the benefit of the insolvent laws, etc. The next term referred to commenced Nov. 5, 1838. The insolvent did not then, or afterwards, appear before the court, or present his petition, or take any steps to obtain the same, but voluntarily presented himself to the prison, Nov. 5, 1838. Whereupon the sheriff notified the plaintiff that the insolvent would be discharged if his board was not paid. This not being done the insolvent was discharged. It was held that his bond was forfeited, for the reason that no petition had been presented.

It will be seen that each of these cases differs materially in its facts from the one before the court. In the one, the insolvent never surrendered himself; in the other, his petition was defective, because improperly sworn to ; and in the one last cited, the petitioner had not even made an attempt to comply with his bond. In the case we are considering the insolvent appears to have made an honest attempt to comply with the insolvent laws of the state, and his only omission was his failure to be in court before it adjourned on the day fixed for the hearing. It is true his petition was criticised as not being in proper form. It sets forth his insolvency, its cause, and a list of his debts. It might have stated some matters with greater particularity. We are not aware, however, that any objection was made to it upon this ground in the court below. It is very late to raise such an objection in the suit upon the bond.

As was said by this court in Saunders v. Quigg, supra: "No objection was made to the sufficiency of the jurat when the petition was presented, and no motion was made, at any time, to dismiss the petition by reason of any alleged defect therein. After it has answered its purpose, and the obligee in the bond, based on the validity of the petition, has accepted the bond and brought suit thereon, it is too late for such an obligee to recover by showing the jurat to the petition was not properly administered."

The only default which the insolvent appears to have made was his nonappearance on the day fixed for the hearing, and this would not seem to deprive the surety of the benefit of the condition of the bond, under the authority of Mullen v. Wallace, Saunders v. Quigg and Marks v. The Bank, supra. It may be that a comparison of the earlier with the later cases upon this subject may show a mellowing of the law, and that the latter pay less heed to technicalities than the former. This change runs all through our law, civil and criminal. The law does not now wholly disregard technicalities, but it shrinks from impaling a man upon sharp points, which have no relation to the justice of the cause. Under the circumstances of this case, to hold this surety liable, would be to impale him upon the sharpest technicality ever recognized by a court of justice.

The fifth, seventh, eighth, ninth, tenth and eleventh specifications of error are sustained. The jury should have been instructed to find for the defendants.

Judgment reversed.