CLAUDE A. NOYES *vs*. RALPH L. PERKINS, ET ALS.

Penobscot.     Opinion November 28, 1930.

*George E. Thompson,*
*Abraham Rudman,* for plaintiff.
*Fellows & Fellows,*
*Ross St. Germain,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.   On report. This is an action of debt on a bond given for the purpose of release from arrest on execution under the provisions of Chap. 115, Sec. 49, R. S. (1916).

The plaintiff on October 4, 1929, obtained in the Supreme Judicial Court for Penobscot County a judgment against Ralph L. Perkins for the sum of $1,014.94. On October 12, 1929, an execution was issued for Perkins' arrest, and on October 18, 1929, he was arrested and committed to jail. On the same day he gave bond as stated above and was released from custody. Alvah W. Blaisdell and Charles H. Page, the two other defendants, were sureties.

The bond was in the usual form. It could be rendered void if the debtor within six months should do one of three things: (1) cite the creditor before two Justices of the Peace and submit to examination as provided by law and take the oath prescribed; (2) pay the debt, interest, costs and fees arising on said execution; or (3) de-

liver himself into the custody of the keeper of the jail to which he was liable to be committed under the execution.

On the evening of February 25, 1930, Perkins was arrested and committed to the county jail awaiting removal on a warrant from the Superior Court of Penobscot County to the warden of the state prison issued for the purpose of removing Perkins from Bangor to Thomaston to begin service of a sentence imposed on him September 30, 1929, the case having been taken to the Law Court whose mandate was received on the day of the arrest. On February 26, 1930, while he was in the county jail in the custody of John K. Farrar, Sheriff and keeper of the jail, Perkins was given entrance to the Sheriff's office by one of the deputies and told the Sheriff that he surrendered himself under the Noyes bond.

The evidence is convincing that the debtor did all he could do and all that he was required to do to deliver himself to the Sheriff. The Sheriff himself so testifies, although not absolutely certain whether the date was February 26 or February 27. The place of the surrender was in the front office of the jail building where the debtor was actually confined, and a new commitment was unnecessary and superfluous. In answer to the question, "Did you at that time accept Mr. Perkins into your custody under this alleged surrender under the bond?" the Sheriff replied, "I didn't accept him and I didn't reject him. I simply says, 'You can leave any papers you wish and we will keep them here *as a record*.' " The question at once presents itself, "A record of what?" There is only one thing of which it could be a record and that was the fact of the surrender and delivery of the debtor into the custody of the Sheriff as keeper of the jail. The copy of the bond which was left with the Sheriff, regardless of when it was left, which we do not regard as important because not necessary to the act of surrender, silently corroborates the claim of surrender and the Sheriff's own testimony relating thereto, and to our mind shows acceptance of the debtor into the jail under his surrender. No more definite act of receiving seems necessary. Written on this copy of the bond and signed by Ralph L. Perkins, in the presence of his attorney, were these words, "I Ralph L. Perkins, the debtor named herein, under the terms in the within bond and by the provisions of law, do hereby deliver my-

self into the custody of the keeper of the jail in and for the County of Penobscot at Bangor."

Even if the Sheriff had refused to receive Mr. Perkins, in our opinion the sureties on the bond would nevertheless have been discharged, because the debtor had done all that he could do under the third provision of the bond. The case of *Saunders' Exr.* v. *Quigg et als*, 112 Pa. St., 546, 3 Atl., 814, held that where an insolvent failed in obtaining his discharge as an insolvent debtor and voluntarily surrendered himself to the county jail, he complied with the alternative condition of his bond "that he shall surrender himself to the jail of the county"; and, though the warden refused to receive him, his bond was void and his sureties were discharged. This case is followed and approved in *Marks et als* v. *Drovers' Nat. Bank, etc.*, 114 Pa. St., 490, 6 Atl., 774.

The sole question involved in the case at bar is whether or not under all the circumstances the debtor made such surrender as would relieve his bondsmen from liability. The record shows some doubt as to just when the copy of the bond was handed to the Sheriff but we do not regard that phase of the case as controlling or even important. Our Court has said in *Hussey* v. *Danforth et als*, 77 Me., 17, that "the production of this attested copy of the execution and return, or of the bond, may be waived, and if the jailer receives the debtor without either, or upon the production of such data as may be satisfactory to him, the delivery is undoubtedly sufficient, *Jones* v. *Emerson*, 71 Me., 407." This case is affirmed in *March* v. *Barnfield et als*, 107 Me., 40, where the Court says, "The bond did not require the debtor to furnish any precepts or copies but only to 'deliver himself.' He did all that he and his sureties engaged he should do."

Did the debtor in the instant case "deliver himself into the custody of the keeper of the jail"?

No question or doubt could have been raised that it would have been a good delivery or surrender to the custody and control of the jailer, if this debtor had come voluntarily from his home to the jail and had done the same things and uttered the same words as he did and said in this case. Nor, under the same assumption, would it be questioned or doubted that what happened in this case was an

actual receiving into custody on the part of the jailer. This was all the debtor's bond required him to do in order that the sureties or bondsmen might be released from liability.

Does the fact that, at the time of the attempted surrender or delivery of himself under this bond, the debtor was in the same jail, under arrest for commitment to the state prison at Thomaston, change the situation? In our opinion, it does not change it. We known of no reason or law to prevent a sheriff holding the same man at the same time in his custody in jail under different and separate processes. One process may be superior to another and in this case the warrant for the debtor's commitment to the State Prison was superior to the execution in connection with which the bond was given and under the terms of which the debtor delivered himself into jail. It was by virtue of the execution that he was originally committed to jail, before the bond was given, and to this detention he returned himself by surrender. A bond is a substitute for the detention of the body of the debtor. *Craggin* v. *Bailey*, 23 Me., 104, 108; *Lowell* v. *Haskell et al*, 45 Me., 112, 113.

If the debtor had actually been in jail under the original arrest on execution when he was arrested for the purpose of commitment at Thomaston, that fact would not have prevented his being taken to the latter place under the superior authority of the warrant. Undoubtedly the Sheriff would have the right, and we believe it would be his duty, at the end of the sentence on which commitment was made at Thomaston to again take the debtor into his custody. We can see no difference in principle between the case where the arrest for purpose of commitment follows confinement under the arrest on execution, and a case, like the instant one, where the surrender and delivery into the custody of the Sheriff under the bond follows the arrest for commitment, and we feel the Sheriff's right and duty after expiration of sentence would be the same.

The reverse of the case before us is found in *Steelman* v. *Mattix*, 9 Vroom, 247, 20 Am. Rep., 389, which is enlightening. This was a suit upon a bond executed by the defendants under the insolvent laws of the state, conditioned that the defendant, Mattix, would appear and apply for the benefit of the insolvent laws, and if he were refused this discharge as insolvent debtor, he would surrender

himself to the custody of the Sheriff of the county. Mattix was refused his discharge and did not surrender himself. The defendants offered in excuse that the surrender was rendered impossible by act of law; that, at the time the discharge was refused, Mattix was incarcerated in the same jail to which he was supposed to have surrendered himself, prior to his removal to the state prison, to which he had been sentenced for a term of years for the crime of rape. The question in that case was whether this was a lawful excuse for the failure to make surrender. The Court in that case said, "In this case, at the very time he was refused his discharge, he was in the custody of the sheriff at the county jail, on the criminal charge, and it was in his power to say to the sheriff, that he put himself into his custody, also, according to the condition of the insolvent bond, in exoneration of his sureties. That would have been an actual surrender in compliance with his undertaking, not at all inconsistent with the fact that he was already held under the criminal charge, and it would have enabled the sheriff to re-take him after he had been liberated from incarceration from the criminal offense. For want of such voluntary surrender, neither the sheriff nor the plaintiff could re-take him after the expiration of his term of imprisonment. The surrender, therefore, was not rendered impossible by the act or operation of law, and the sureties are not released from their stipulation that Mattix should make it."

It being our opinion that there was such surrender and delivery in this case as relieved the principal and sureties on the bond from all liability thereon, the entry must be,

*Judgment for the defendants.*