## JOHN G. SCHUEY v. D. W. SCHAEFFER.

### APPEALS BY PLAINTIFF AND DEFENDANT FROM THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, IN EQUITY.

Argued October 17, 1889—Decided October 28, 1889.

(a) In a proceeding by bill for specific performance of a parol contract for the sale of land, it was found upon sufficient evidence that the contract had been entered into, possession taken by the plaintiff in pursuance thereof, and valuable improvements made by him upon the land.

(b) It was also found that the purchase money for the land was $100, payable in six years in cash or coal; that, though coal had been delivered, the purchase money had not been settled in full, yet the possession taken had been kept continuously for 14 years, to the date of the filing of the bill.

1. In such case, the fact that the purchase money was not settled in other transactions between the parties being the fault of the defendant, it was not error to decree specific performance, a deed to be executed and delivered to the plaintiff upon payment of the purchase money due.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 232, 233 October Term 1889, Sup. Ct.; court below, No. 24 December Term 1881, C. P. in Equity.

On September 12, 1881, John George Schuey filed a bill in equity against John Scott, to enforce specific performance of a contract for the sale of a lot of ground in Kittanning borough. The bill averred:

That the plaintiff (1) purchased of the defendant a lot described, in the year 1867, for which he was to pay the sum of $100, (2) "and did pay the same in full;" that the lot was marked out and exclusive possession taken by him, and a dwelling house, stable, and other valuable improvements made thereon; that he had resided on said lot since his purchase, and the contract had been so far executed as to render it inequitable to rescind the same, nor could the plaintiff be compensated in damages; that (3) he had frequently applied to the defendant to execute and deliver to him a deed for the lot, but the defendant had neglected and refused so to do, etc.; praying, etc.

The defendant answered denying the averments of the first, second, and third paragraphs of the bill "as therein alleged;" denying, further, that by writing signed by himself or agent, he ever sold or agreed to sell the lot to the plaintiff, and that said plaintiff ever made and put upon the lot any improvements that could not be compensated for in damages; praying, etc.

The cause being put at issue by replication, it was referred to *Mr. Calvin Rayburn*, as examiner and master, who made a report finding that Schuey and Scott, having made a parol agreement for the sale and purchase of the land described in the bill, and Schuey having gone into possession and made valuable improvements thereon and paid all the purchase money, he was entitled to a decree for specific performance of the contract according to the tenor and effect thereof. A decree was recommended accordingly.

Pending the proceeding before the master, the defendant had died, when his death was suggested and D. W. Schaeffer, his administrator, substituted.

To the report of the master the defendant filed exceptions. These exceptions, being overruled by the master, were renewed in court, and after argument were disposed of by the opinion of WHITE, P. J., 40th district, presiding:

The plaintiff, by his bill, seeks to enforce specific performance of a parol contract for the sale of a certain piece of ground in

the borough of Kittanning. The recitals of the bill are brief. The plaintiff avers that in 1867, he purchased of John Scott, the defendant, a lot containing ninety-six perches fronting on the Allegheny Valley railroad, . . . . . for which he was to pay $100; that he paid the same in full; that the land was marked out and exclusive possession taken and a dwelling house, stable and other valuable improvements made thereon; that the plaintiff has resided in the house built on the lot ever since the purchase, and that the contract has been so far executed as to make it inequitable to rescind, and that he could not be compensated in damages.

The answer of the defendant is not as full, complete and positive, to the material averments of the plaintiff's bill, as good equity pleading would require, when a defendant has a good defence. The effect of this we will briefly discuss hereafter.

It is no longer necessary to question that a parol contract can be enforced for the sale of real estate, notwithstanding the statute of frauds, and that a bill in equity can be maintained for its enforcement. To cite the cases establishing this doctrine would appear to be an affectation of expertness at case hunting. While such a contract, then, can be enforced, we must carefully consider the rules within which it must be brought. It is, in the first instance, necessary for the court to determine as a question of law whether the evidence is sufficient to take the case out of the operation of the statute: Overmeyer v. Koerner, 81* Pa. 517; Irwin v. Irwin, 34 Pa. 525. To establish such a contract, its terms must be shown by full, complete, satisfactory and indubitable proof; the evidence must define the boundaries and fix the consideration; exclusive and notorious possession must have been taken under it, and continuously maintained; and the contract must have been so far in part performed that compensation in damages would be inadequate, and rescission inequitable and unjust: Anderson v. Brinser, 129 Pa. 376; Hart v. Carroll, 85 Pa. 508. The late case of Jamison v. Dimock, 95 Pa. 52, recognizing the rule we have indicated, has also stated that the equities of a vendee by parol, may rest on other equally available grounds. Of course such equitable grounds must be tantamount, we apprehend, to the taking of actual possession, the making of improvements and the inability to gain adequate compensation otherwise than by

performance. Following the rule, however, we have stated, let us see what evidence the plaintiff has produced to support his bill.

The plaintiff himself testifies, and having been examined while the defendant was still living, he is a competent witness. He says, substantially, that he had a verbal bargain with Scott about it in May, 1867. He describes the land as the same he pointed out to Mr. Whitworth, who made a survey of it in August, 1881. He says the price agreed upon was $100, no more, no less; that he took possession the fall of that year; that he was to pay him as he pleased; that if he could not pay him in six years without interest, he could pay him in fifteen; that he could pay him with coal or money or anything else; that after he took possession, in September, 1867, he built a frame two-story house, furnishing all the materials, and hiring John Scott, the defendant, to build it; that this house cost him about $1,300; that he put up other buildings, and fenced the lot; that he built the fence in 1868; that Mr. Scott showed him where to put the fence all around the lot; that he paid Mr. Scott for his work on the house; that the stable was built on the ground adjoining that the plaintiff originally bought; that Scott told him that if the lot he first sold him was not enough, he would give him more; and that in pursuance of this contract with the defendant, he erected his stable on the ground the defendant told him to take in addition to what he originally pointed out. The plaintiff further testifies that he took possession of the whole of this land in pursuance of this contract with the defendant, immediately after it, made the improvements, and has been on it ever since. The plaintiff further claims that he paid the entire purchase money in coal and cash furnished to the defendant.

—The court here reviewed and discussed the testimony of other witnesses sustaining the case made by the plaintiff's testimony, and proceeded:

Mrs. Catherine Schuey, the wife of the plaintiff, testifies that after Mr. Scott sold the land to her husband, Scott and her husband came into Scott's shop, in which they were living, and said "Mrs. Schuey and grandpap, I have sold Schuey a nice piece of land and cheap, too, for $100, without interest, and six years to pay it; if he could not pay in six years, could pay in

Opinion of Court below.

fifteen . . . . . He said the land was up on the hill. Scott pointed up the hill from the shop and said he had sold a piece of land. We were at the shop when he pointed up the hill. He pointed toward the place where our present house is. He said the property was to be from centre of railroad 100 feet deep into the hill, and 45 feet wide along the railroad. He said the whole place was to be 45 feet wide. Upon the hill it was to run to Judge Buffington's land. I cannot tell whose land was to run on the lower side. John Scott said it was to run on the lower side to John Steinmet's; on the upper or northern side it was to run to Buffington's land. I saw Mr. Whitworth measure the land. I was in the yard at the time when Scott showed Schuey the lines around the place. This was after we had built the house. Mr. Whitworth went to the same place Scott pointed out to Schuey, of which I have spoken. Scott built the house for us. Schuey got him to build it. Mr. Williard built the stable for Mr. Schuey." She further states that they have lived in the property since 1867, occupying to the lines to which they now claim. Then, she further says: "At first we bought the land where the house is and then found we had not enough and asked him for some more for the stable and kitchen. And he said what you ask me for; take so much you want and build where you want. This was after the house was built, may be one or two years. . . . . . Scott showed us where to put the stable. I asked Scott several times for the deed, but one morning he said that when he came back from Virginia he would give us a deed and would settle and make everything right with us." She further testifies to making several payments on the lot.

Notwithstanding the objections of the defendant to the competency of the plaintiff and his wife, we think they are competent, because their testimony was taken while the defendant was alive and appeared by counsel and cross-examined.

But little testimony has been offered by the defendant contradicting the fact of the sale, and none whatever contradicting the plaintiff as to being in possession ever since the alleged purchase in 1867. The bulk of the testimony of the defendant is directed to rebut the claim of the plaintiff as to the expense of the house and building, and as to the fact of actual payment of the purchase money.

The defendant's answer, as we remarked, is somewhat evasive. While the averment in the first paragraph of the plaintiff's bill states the property purchased, the second avers actual payment, the taking possession and erecting the improvements, and that he cannot be compensated in damages; and the third recites that he has frequently applied to the defendant for a deed in pursuance of the contract, which has been refused. The answer of the defendant to these is somewhat evasive. To the first he replies: "I deny the averments contained in the first paragraph of the plaintiff's bill as therein alleged." The second is in the same form, and so also the third; while the fourth paragraph of the answer denies that the defendant ever signed any writing by himself or agent, selling or agreeing to sell the ground described in the plaintiff's bill, to him.

It is quite true, in a bill for specific performance of a parol contract for the sale of real estate, the plaintiff must make it out by evidence, coming up to the standard of the rule for such cases; yet when the plaintiff has been specific in his averments about the contract, the failure of the defendant to fully deny the terms as stated, will be a most pregnant circumstance to be considered when inquiring whether the matters claimed by the plaintiff ever occurred. An answer must be full and perfect to all the material allegations in the bill; it must confess, avoid, deny or traverse all the material parts of it. To so much of the bill as is necessary and material for the defendant to answer, he must speak directly and without evasion, and he must not merely answer the several charges literally, but he must confess or traverse the substance of each charge: Brightly's Eq., § 677. The rule is laid down clearly in Pusey v. Wright, 31 Pa. 395: "If a contract be set forth, and the defendant be called on to answer, a denial that it exists, modo et forma, would not be good, according to chancery practice, for this is subject to the implication that it existed in some other form. To avoid this, the defendant should state how it existed and wherein it had no existence." This rule has not been observed in the defendant's answer, nor are we enlightened by the testimony of the defendant in the case. It appears, however, that after these proceedings were instituted and progressed, the defendant died. When he made his answer, however, he was in full life and his failure to deny the averments of the plaintiff, if they were not in fact

true, is an element proper to be considered with the other evidence in the case.

In view, then, of the evidence we have briefly epitomized, together with the paucity of evidence from the defendant in denial, we entirely agree with the master in his finding that there was a contract of purchase and sale between the parties for so much of the land as is described as being 45 feet by 100 feet, on which the house and some of the out-buildings are erected, so far executed that it would now be inequitable to rescind it. As to the balance of the ground claimed by the plaintiff, we are not so clear. We would hesitate to direct a conveyance for that, were it not for the satisfactory evidence that this part of the ground has also been improved by the plaintiff by the erection of a stable thereon. This stable, it would appear from the evidence, was erected with the knowledge of the defendant and he also actually pointed out the ground to the plaintiff on which he was to build and on which it was actually built and thereafter occupied, thus including that portion of the lot in the original purchase; the plaintiff claiming that by the original purchase for the $100, he was to have the lot first described and what more was necessary, immediately adjoining it, for his buildings. These facts would estop the defendant from denying the plaintiff's title to that portion of the ground. " Where one advises and encourages another to enter upon land and invest money or expend labor, assuring him that he will thereby acquire title, he cannot call in question such title:" Woodward v. Tudor, 81* Pa. 382. This is so, although the encouraging party acted in ignorance of his own rights. It is but the reiteration of a doctrine well established by the authorities, and repeated in Putnam v. Tyler, 117 Pa. 586.

Even if there had been but a gift of the land on which the stable was erected, and the defendant encouraged the plaintiff to take possession and make valuable improvements upon it, he would be estopped from asserting any title as against the plaintiff. C. J. GIBSON says, in Rerick v. Kern, 14 S. & R. 271: " But a license may become an agreement on valuable consideration; as, where the enjoyment of it must necessarily be preceded by the expenditure of money, and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. Such a grant

is a direct encouragement to expend money, and it would be against all conscience to annul it, as soon as the benefit expected from the expenditure is beginning to be perceived." This is the doctrine, also, of Young v. Glendenning, 6 W. 509. These cases are expressly approved in Big Mountain Imp. Co.'s App., 54 Pa. 371; and in Troxell v. Lehigh Iron Co., 42 Pa. 513. So also, in Richards v. Elwell, 48 Pa. 363; Moss v. Culver, 64 Pa. 424; Graham v. Craig, 81* Pa. 465.

But it is complained that the plaintiff's bill does not embrace a description of all the lands for which he prays a decree of specific performance. This appears to be true. The evidence submitted, however, before the master, embraced all the land the plaintiff seeks, and shows he was in the actual possession of it since the improvements were made on it. We have thus the whole subject before us. It is true, our equity practice is controlled by particular rules, as well as that of our law courts. While we would not relax, unnecessarily, these rules, it was well said by Chief Justice LOWRIE, in Troxell v. Lehigh Co., supra: " We must not make precision of practice of more value than justice," and courts have often said so. We have just happened on a case where Lord MANSFIELD declares his disapprobation of " objections " which have no relation to the merits of a cause: Ross v. Johnson, 5 Burr. 2827; and the Romans had a standing maxim in their law that legal forms yield to the evident equity. Then, again, Danzeisen's App., 73 Pa. 65, where a bill had been dismissed because it alleged a trust, and the evidence failed to establish it at nisi prius, the Supreme Court reversed, being of opinion the facts showed a mortgage, though the bill contained no allegation to that effect, in order to do equity and reach the justice of the case, saying: " We cannot turn the plaintiff out of court by reason of the inappropriate terms used in the bill, indicating a trust instead of a mortgage." So also, in Postlethwaite's App., 68 Pa. 477, Justice SHARS-WOOD says, " It is evident that the jurisdiction of the court having attached, by the presentation of the petition, it had entire control of the subject that a court of equity would have. Having all the parties before it, it can and ought to make such decree as law and equity would require, and which will be binding upon all." So we have the parties before us and all their case. We will endeavor, therefore, to end all their disputes

touching this subject matter, in this proceeding. We are of opinion, therefore, the plaintiff is entitled to a decree for a conveyance of the land contained within the lines of the draft made by Mr. Whitworth, and which are recited in the decree which we have directed to be drawn up.

While we find, for the reasons stated, that the plaintiff is entitled to specific performance and to a conveyance for the land, we cannot agree with the finding of the master, that the plaintiff has also paid all the purchase money. By the terms of the contract he was to pay the defendant in cash and coal. It is in evidence the plaintiff was digging coal, after he bought this land, and delivered some to the defendant, some to other parties, the defendant lifting the money. This continued from 1867 up to 1870 or 1871. It was out of these transactions the plaintiff contends he had paid the purchase money. It is in evidence, however, that to No. 330 March Term 1874, the plaintiff sued the defendant to recover for coal delivered in pursuance of his contract with defendant. In this action, the plaintiff filed a statement of many items of coal and other transactions from 1867 to 1870. This case was tried in December, 1876, in which the plaintiff recovered judgment for $435.41, which was subsequently collected by execution in full. By an inspection of the record and the testimony in that case, we cannot doubt that the plaintiff recovered from the defendant for all the coal he had delivered to him or for him to other parties. In his testimony, the plaintiff, on his cross-examination, said, in answer to the question: " Do you know what amount of coal you delivered to Scott or upon his order for or on account of the purchase money of the alleged land purchase?" A. "I cannot tell you that for sure, because they are all up at the court house in the suit that was tried between Scott and me. Not all the coal that Scott got was not included in that account. The extra coal was not in. By the extra coal, I mean the slack and nut coal. The slack and nut coal was not included in the account at the court house." Q. "Have you any account of the amount of slack and nut coal which you call extra coal, which was delivered to Scott or upon his order?" A. "I had, but it is lost." Q. "Do you recollect the times of the delivery of the slack or nut coal, or extra coal, or the persons to whom the same was delivered?" A. "Scott

got the nut and slack from me from the beginning to the last. I do not recollect the dates. John Wick got some. Mr. Wohl got some. Anton Hirtenburg got some. I do not know whether Flinn got any or not. Bill Hill got some and John Westwood. Westwood didn't pay yet."

Now, by looking at the plaintiff's account filed to the case tried in 1876, all these parties are named as having received coal between the dates indicated. There are also items against the defendant for slack coal delivered to him. It appears, then, that the case tried in 1876, settled all the moneys coming to the plaintiff from the defendant for coal delivered. At all events, it embraced all their coal transactions and cash accounts between 1867 and 1871. In Hibshman v. Dulleban, 4 W. 191, the doctrine of the Duchess of Kingston's Case, 11 St. T. 261, is fully recognized. The judgment of a court of concurrent jurisdiction directly upon the point, is good as a plea in bar; or, as evidence conclusive between the same parties in the same matter directly in another court. " Whatever was claimed by the narr and could have been tried in the former suit between the parties, is presumed to have been included in a general settlement thereof, and the burden of proof is upon the party alleging otherwise: " Moser v. Trust Co., 2 Cent. R. 808. To the same effect are the utterances of Head v. Meloney, 111 Pa. 99. We are of opinion, therefore, that the coal and other transactions resulting in an indebtedness by the defendant to the plaintiff, out of which the purchase money was to be paid for this land, were settled, or are presumed to have been settled, in the case tried between them in 1876.

We are also persuaded to this conclusion by the declaration of this court, through Judge Boggs. On January 18, 1877, the defendant, Scott, presented a petition to Judge Boggs, reciting certain judgments he held against the plaintiff and asked that they be credited upon the judgment recovered in 330 March Term 1874. This was refused in an opinion by Judge Boggs, saying: " In view of the evidence given on the trial of the cause tending to show that the purchase money of a certain lot of ground was embraced in the claim sued for and recovered in this case, and had been applied as payment of such purchase money as alleged by the plaintiff, while the defendant alleged he had never sold the ground to the plaintiff or his

wife, which the plaintiff contended he did sell to him and contended the purchase money was paid, but sued for and recovered in this case, to save it from the statute of limitations, this controversy respecting the sale and purchase of a lot of ground has never been settled, either by the parties or by law," therefore, the application to make the set-off was refused. We are, therefore, of the opinion, before the plaintiff is allowed to lift the deed, which we will direct the defendant's administrator to make, the purchase money should be paid. It appears to us, from the evidence, the purchase money was to have been paid in six instalments from May, 1867. This would be $16.66 a year. The interest, therefore, on this would amount to $112.92. We will direct, therefore, the following decree to be made. We think this is a proper case to divide the costs between the parties. It was in the power of the plaintiff to have allowed a credit for the purchase money on the case tried between the parties in 1876, or to have paid it into court since; in this proceeding the defendant is also in fault in not delivering or offering a deed. Dull's App., 113 Pa. 510, is in point as to costs.

And now, to wit, August 30, 1889, a deed to be made by the defendant's administrator for the land indicated by the lines of the Whitworth draft and to be filed in court, to be lifted therefrom by the plaintiff upon payment of the sum of $212.92. Upon failure of the plaintiff to pay such sum within three months from this date, the defendant may proceed for its collection. It is further directed, that the costs of this proceeding be equally divided between the plaintiff and the defendant's estate. A decree will be formally drawn up accordingly.

A formal decree in accordance with the foregoing opinion having been entered, the plaintiff took the appeal to No. 232, specifying in substance that the court erred, inter alia:

3. In finding that the purchase money for the lot had not been paid by the plaintiff.

4. In decreeing that the deed ordered should be lifted only upon payment of $212.92, with interest from the date of the decree.

5. In directing that the costs be divided between the parties.

The defendant's administrator took the appeal to No. 233, specifying in substance that the court erred, inter alia:

4. In not finding that the collection of the full amount of the judgment for the coal account was a rescission of the alleged contract.

6. In not finding that the improvements placed upon the land were of such a character that the plaintiff could readily be compensated in damages.

7. In finding that the plaintiff was entitled to a decree of specific performance, and in decreeing a conveyance for the land.

*Mr. H. L. Golden* (with him *Mr. E. S. Golden*), for Mr. Schuey.

Counsel cited: (1) 1 Daniel's Ch., 3d Am. ed., 259, 361, 739, 860; High v. Butte, 10 Yerg. 385; Story's Eq. Pl., 759; 1 Madd. Ch., 379; Naglee's Est., 52 Pa. 154; 3 Greenl. Ev., § 285; Pusey v. Wright, 31 Pa. 395; Brightly's Eq., 490, 494, §§ 676–7, 723; Everhart's App., 106 Pa. 349. (2) Willard v. Tayloe, 8 Wall. 557.

*Mr. M. F. Leason* (with him *Mr. J. H. McCain*), for Mr. Schaeffer, admr.

Counsel cited: (1) Sands v. Arthur, 84 Pa. 481; Hamner v. Griffith, 1 Gr. 196; Pearsoll v. Chapin, 44 Pa. 12; Hart v. Carroll, 85 Pa. 510; Bowers v. Bowers, 95 Pa. 480; McKowen v. McDonald, 43 Pa. 441; Overmeyer v. Koerner, 81* Pa. 522; Moore v. Small, 19 Pa. 469. (2) Hedge's App., 63 Pa. 277; Coleman v. Ross, 46 Pa. 184; Vollmer's App., 61 Pa. 118; Troxell v. Iron Co., 42 Pa. 517; Danzeisen's App., 73 Pa. 65.

## SCHUEY'S APPEAL.

PER CURIAM:

The learned master's findings of fact were all approved by the court below, except the finding that the purchase money was fully paid. An examination of the evidence, master's report, and very elaborate opinion of the learned judge of the Common Pleas, has satisfied us that the latter was correct in finding that the purchase money was not actually paid to the appellee.

It is unnecessary to refer specially to the facts upon which the decree for specific performance is based. They are fully presented in the report of the master and opinion of the learned judge. In view of all the facts, the decree is just and equitable, and should not be disturbed.

Statement of Facts.

Decree affirmed, and appeal dismissed, at the costs of appellant.

## SCHAEFFER'S APPEAL.

PER CURIAM:

For reasons briefly suggested in opinion disposing of Schuey's Appeal, we think the decree should not be disturbed.   The facts in connection with the non-payment of the purchase money, as found by the court below, ought not to operate as a rescission of the parol contract.   The purchase money was never actually paid, and it was the fault of the appellee that it was not settled in other transactions between the parties.   We are unable to see that appellant has any just reason to complain.

Decree affirmed, and appeal dismissed, at the costs of appellant.