MRS. JULIA COMPAGNO,
PRAYING FOR A CONCURSUS.

No. 7443.

April 3/19

CHARLES F. CLAIBORNE, JUDGE.

On March 8th., 1917, plaintiff, Mrs. J. Compagno, the owner, made a written contract with Edwin L. Markel, contractor, to erect a building for the price of $2770.40, payable in five installments of $554.08 each; the fourth payment "when the house is accepted and completed", and the fifth and last payment "forty-five days after".

The United States Fidelity and Guaranty Company signed Markel's, the contractor's, bond for $1385.20.

Markel erected the building. By a writing dated June 29th., 1917, recorded in the mortgage office on the next day, June 30th., Mrs. Compagno stated:

"Notice is hereby given to all whom it may concern that I did on the 18th. day of May, 1917 accept the completed building erected by Edwin L. Markel, contractor &c.".

Mrs. Compagno made four payments to Markel, amounting to $2216, leaving unpaid only the fifth and last payment of $554.??.'The payments were made on March 16, 22, 31st. and the fourth payment on May 18th., 1917.

But the men who furnished the materials towards the building claimed that they had not been paid. The following materialmen filed sworn accounts with Mrs. Compagno and record-ed them in the mortgage office, viz:

| 1o | June 29th., 1917, | F. W. Devoe and C. T. Raymolds & Co. | 13.30 |
| 2o | " " | " Geo. H. Haindel | 215.00 |
| 3o | " " | " John H. Gaignard | 185.00 |
| 4o | " " | " Salmen Brick & Lumber Co. | 33.50 |
| 5o | " " | " Henry Scheibe | 67.65 |
| 6o | " " | " Carolina Portland Cement Co. | 43.25 |
| 7o | " " | " Jordy Bros. Slate Co. | 225.00 |

205

| | | | | | |
|---|---|---|---|---|---|
| 8o. | June | 29th., | 1917, | Miller-Goll Manfg. Co. | 380.82 |
| 9o | " | " | " | J. W. Thompson | 117.24 |
| 10. | " | 30th., | " | W. W. Carre | 543.66 |
| 11o | July | 2nd., | " | Jos. B. Crasto | 34.00 |
| | | | Making a total of | | $ 1858.42 |

Thereupon Mrs. Compagno filed these concursus proceedings, deposited the last installment of $554.08 remaining in her hands in the registry of the Court, for distribution among the materialmen; she cited the surety and all the materialmen, and asked to be relieved of all further liability, and that the privileges recorded by the materialmen be cancelled.

1o Devoe & Raynolds answered claiming a judgment against the owner and the surety with privilege.

2o Haindel prayed for judgment against the owner, the contractor and his surety.

3o Gaignard charges that the payments were made in anticipation, that the contract and bond were not recorded within the time required by law, and he prays for judgment against the owner, the contractor, and his surety.

4o The Salmen Brick and Lumber Co. prayed for judgment against the owner, the contractor and his surety.

5o Scheibe answered that the payments were made in anticipation and prayed for judgment also against the above named three parties.

6o The Carolina Portland Cement Company aver that the payments were made in anticipation, that the other accounts were not served in time upon the owner, and asks for judgment also against all three above parties.

7o Jordy Brothers allege that the contract and bond were not recorded in time and they pray for judgment against all three parties also.

8o The Miller - Goll Manufacturing Company charges that the contract and bond were not recorded in time and that therefore the owner is liable to it as well as the contractor and surety.

9o J. W. Thompson makes the same allegations and prayer.

So do the Carre Company.

Crasto excepted that the petition set forth no cuase of action and that the Court was without jurisdiction because he had filed suit upon his claim in the City Court and had obtained against Mrs. Compagno a judgment from which an appeal was presently pending before the Court of Appeal. The judgment fails to pass upon these points, and Crasto has not appealed nor prayed for an amendment of the judgment. We cannot consider his exceptions.

For answer he demands judgment against the plaintiff and the surety.

Edwin L. Markel, through his trustee in bankruptcy, alleged that the contract was for $2855, and plaintiff having paid only $2216.32, remains owing him $638.68 which he claims both against the owner and his own surety.

The Surety Company pleaded vagueness, non-joinder of defendants, and no cause of action. These exceptions were not pressed upon appeal and must be considered as abandoned.

For answer the Surety Company admitted the building contract and its signature to the bond, but denied that the payments had been made or that they had been made as they became due , and averred that there had been alterations and extra work done by the contractor for which the plaintiff was responsible; it admitted the acceptance of the building as alleged; it denied that the materialmen had "given credit for all the materials returned or payments made respectively to them", and it prayed for judgment against the plaintiff dismissing her suit.

Howard J. Jones intervened claiming to have done work and furnished materials necessary for the electric wiring of the building amounting to $45.50 less a part payment of $5.00 for which he prayed judgment.

The matter was referred to a commissioner.

He did not pass upon the question of the liability of the owner to the materialmen, for the reason, as stated by him, that the sum deposited in Court and the amount for which the surety was liable were more than sufficient to pay all claims

as reduced by him. The liability of the owner has not been pressed in this Court and we shall not pass upon it either.

The Commissioner found that at the time the materialmen in this cause were supplying Markel with materials to execute the contract in this case, Markel had on hand seven several contracts for which they were supplying him; and that while the materialmen were careful to identify the particular building to which the materials went, they kept with the contractor only one general account which was charged with all materials furnished and credited with all payments made, without inquiring from what source the contractor derived the money paid by him and without imputing the payment to the materials furnished to any particular building, and without directions from the contractor as to what building to credit.

Under the circumstances the Commissioner was of opinion that the payments made by the contractor to the furnishers of materials during the time of this contract from March 8th. to May 18th. should be distributed in the proportion of one-seventh each among all the materialmen who had furnished materials during that time. The Commissioner was guided by the following authorities quoted by him, viz: 6 N. S., 113; 3 R., 361; 2 A., 24; 3 A., 351; 4 A., 509; 9 A., 455; 13 A., 294; 36 A., 312; 115 La., 1051.

Some of those decisions maintain the proposition that payments must be imputed proportionally to debts of an equal nature and all due.

The Commissioner allowed the following claims: John H. Gaignard for $185 and Howard J. Jones for $40;50 and Jos. B. Crasto for $34.

He disallowed the claim of Devoe and Raynolds of $13.30 and of Scheibe and Carolina Portland Cement Co.

He reduced the claim of Haindell from $215 to $45, because Haindell had received from Markel $90 on account; and, at that time, he was furnishing two jobs for Markel which were due, and he imputed the payment one-half, or $45, to each job.

He reduced the claim of the Salmen Brick and Lumber Company by $14.28, because they had received from Markel $100

on account, and, at that time, they were furnishing seven jobs for Markel which were due, and he imputed the payment one seventh or $14.28 to each job.

By the same process he reduced the claims of Jordy Bros. from $225 to $167.16, Miller-Goll Man?g. Co. from $380.92 to $232.82, J. W. Thompson from $117.24 to $68.88, and W. W. Carre from $543.33 to $249.38.

He recommended that judgment be rendered in favor of the above named parties, that the Surety be condemned to pay an amount which, added to the sum deposited by the owner, would be sufficient to pay their cleims and that their inscriptiors be cancelled.

All the materialmen opposed the report of the Commissioner, except Gaignard, the Salmen Brick & Lumber Co., J. W. Thompson, and Joseph B. Crasto. They all complained of the imputation made by the Court "proportionally" to the number of jobs.

The Surety Company opposed the report on the grounds:

1o that the Commissioner had failed to find that Mrs. Compagno had anticipated the fourth payment of $554.08;

2o that she was liable for extra work to an amount of $350.82, and

3o that the account of W. W. Carre was not credited by $51.95 amount of lumber returned on May 25th., 1917;

4o that the evidence fails to show that the materials claimed to have been furnished were used in the building; and

5o that "the Surety is entitled to have all the payments made to the several claimants during the construction of the building in question credited on the said accounts".

The report was filed on March 6th., 1918; the exceptions to it were fixed for trial for April 5th., 1918.

On May 24th., 1918, judgment was rendered increasing the amount allowed to Jordy Bros. from $167.16 to $212.50, reducing the compensation of the Commissioner from $200 to $175, and in other respects confirming his report.

Devoe and Raynolds, Haindell, Scheibe, Carolina Portland

Cement Co., Miller-Goll Manfg. Co., W. W. Carre and the Surety Company appealed.

In this Court Haindell prayed for an amendment of the judgment in his favor from $170 to $215.

The account of Devoe & Raynolds is proved with reasonable certainty. Their assistant manager testifies that he sold the articles himself to Markel and delivered them to him at the store, and that he stated that they were for the Conpagno job, and the bills for the articles were approved by Markel. The admission of the principal is prima facie proof against the Surety. 2 N. S., 422 (433).

But it is contended that Devoe & Raynolds as well as Scheibe cannot recover beacuse their opposition was filed more than ten days after the filing of the report. The language of the law is not susceptible of such interpretation. It says, sec. 10 of Act 52 of 1912 p 63:

"The parties shall have ten days from the time of the filing of the report to file exceptions thereto; and if no exceptions are filed within that period by any interested party, the report shall stand confirmed on the next rule day after the ten days have elapsed."

The report was filed March 6th., 1918; the ten days expired Monday, March 17th; the next rule day was Friday, March 22d; the exception was filed March 20.

Assuming that no action of the Court is necessary to confirm the report, we think the report remains open for exceptions up to the next rule day when alone it shall stand confirmed. The rule of practice in all cognate matters is that "when an act is to be done within a given time, as the filing of an answer and the like, it may be done afterwards if nothing occurs to prevent it. Thus, if a judgment by default has not been taken, an answer may be put into the merits, although more than ten days have elapsed from the service of citation". 2 H. D., 1580; 7 La., 350; 22 A., 332; 35 A., 907; 41 A., 668; 6 A., 119; 7 A., 613; 3 A., 196; 11 A., 447.

Although the law prescribes that oppositions to an

Administrator's account must be made "within ten days" from notice of the filing of the same, oppositions may be filed at any time prior to the homologation of the account. 9 La., 48, 57; 29 A., 378 (383); 14 La., 237 (240); 3 A., 384; 35 A., 907.

Where the police jury was authorized by law to appoint an attorney within thirty days and in the event the police jury failed to make the appointment within that time, the parish judge was to appoint, and the police jury made the appointment after the 30 thirty days but before the judge had acted, it was held the appointment by the police jury was valid. 23 A., 786.

An opposition to the appointment of a curator filed ten days after notice is in time if made prior to the appointment. 6 A., 810; 33 A., 1137.

An opposition to an account has been likened to an answer. 27 A., 552; 28 A., 607; 29 A., 525; 30 A., 270.

But the failure to file an opposition cannot deprive one of the right of appeal. 48 A., 711. *C. P. 571* —

We shall now take up the grounds of opposition of the Surety Company.

1o As to the anticipated fourth payment.

The building contract reads as follows:

"$554 when the house is accepted and completed".

The fourth payment was made on May 18, 1917. We have already seen that Mrs. Conpagno, on June 29th., subscribed a document and recorded it, by which she declares that on May 18th., 1917, she had accepted the completed building. There is nothing to show that the building was not accepted by her as completed on that day. If that is true, then the payment was correctly made. As between the owner and the contractor, the completion of the building entitled the latter at once to the fourth payment. He was not bound to wait for the owner's acceptance, if unjustified. But the surety contends that the time of payment could only date from the recordation by the owner of her "acceptance" under the Acts of 1912 and 1916. In relation to this "acceptance" the Act says: "until which time the delays to file liens will not run". In interpreting these words the Supreme Court has said in Dreyfous vs American Bonding Co., 136 La., 498:

211

"The whole and sole purpose of the registration
of this notice is that it may serve as a starting
point for the delay of 45 days within which the
liens must be filed".

The owner has no right to require the contractor to wait
for his payment until he has recorded his acceptance. The
owner may or may not record his acceptance. It is a provision
in his interest; a barrier against the attacks of materialmen
which he may or may not erect. It is a matter between him and
the materialmen, and not between him and the contractor.

2o Extra work:

Jones testifies that he furnished an electric bell
not on the plans, worth $3; this sum will reduce his claim
against the Surety to $37.50.

Goll testifies that he made a bid of $325 for the
frames, sash, doors, and blinds, called for by Markel to ex-
ecute his contract; he afterwards furnished additional mater-
ials to the amount of $55.82 called for by Markel. The Sure-
ty contends that this last sum should be considered as an
"extra" and rejected as against it. There is no evidence that
the materials representing the $55.82 were not necessary to
complete the contract; or in other words that they were needed
to make extras, or work not provided for by the contract.
There is no presumption that they were for extra work.

The same may be said of the claims of Scheibe for
$13.25, and of W. W. Carre for $275.75.

3o We find a credit of $51.95 on May 25th., 1917 for
return of lumber from Fourth and Magazine - on bill of W. W.
Carre.

4o The testimony makes it reasonably certain that all
the materials charged for were used in the building.

5o The last contention of the Surety is that several
of the materialmen had several outstanding accounts with Mar-
kel for materials furnished to several distinct and separate
jobs prior to and during the period of this contract which
Markel still owed them; that after the materialmen had fur-
nished materials to perform this contract, they received from

212

Markel payments of sums of money; that the materialmen applied these payments to the extinguishment of the claims against Markel of longest standing, while, according to law, they should have imputed those payments "to the debt which the debtor, (Markel) had, at the time, most interest in discharging of those that were equally due"; that, according to law, the debts due by Markel for materials furnished to this building were the ones Markel had most interest in discharging becuase their payment was secured by a Surety, and thereofe these materialmen should have credited or imputed these payments to the extinguishment of the claims herein.

The rules relative to imputation of payments are contained in the articles of the Civil Code 2163 (2159) to 2166 (2162).

According to them the debtor of several debts has the right to declare when he makes a payment to which one of the several debts he wants the payment to be imputed. C. C. 2163; C. N., 1253.

When the debtor has not designated which debt he wants to pay, the creditor may at the time of payment make the imputation by giving a receipt by which he imputes the payment to one of several debts; and when the debtor accepts such a receipt, he can no longer require that the imputation be made to a different debt. C. C. 2165 (2161); C. N. 1255.

But it is necessary that the receipt itself should designate the particular imputation; it is the receipt itself which controls. It is also necessary that the receipt should have been accepted. It is the receipt and the acceptance and acquiescence in it that is equivalent to a contract. 33 Dallaz Rep. Leg. p 452 ⸲ 2022, 2023; 3 Dalloz C. A. Art 1255 ⸲ 1; 28 Demol. ⸲ 35; 3 Laromb:p 423 ⸲ 3 and 4; 12 Duranton ⸲ 193 p 304; 115 La., 1063; 6 R., 124. Therefore until the debtor has received the receipt he may reject the imputation made by the creditor. Pothier Oblig No. 566; 15 A., 526; 2 A., 24, 820.

When the imputation has not been made either by the debtor or by the creditor with the consent of the debtor, it is made by law in accordance with the four following rules:- C. C. 2166 (2162);C. N.;1256:

213

1o When some of the debts are due, and others are not due, the imputation must be made to the debt which is due, although less onerous, in preference to the one which is not due;

2o Between several debts which are all due or not due, the imputation must be made to the debt which the debtor had at the time of payment the most moral or pecuniary interest in discharging.

3o If the debts are all due and of a like nature, the imputation must be made to the debt which has been longest due.

4o If all things are equal, if all the debts are due, and of equal date and nature, the imputation is made proportionally.

The French commentators are unanimous in thier opinion that the debtor has the most moral and pecuniary interest in discharging his debt secured by a surety for the reason that he is bound in honor to protect his surety, that he is subject to an eventual recourse by the surety, and that by paying he discharges himself towards two persons, the creditor and the surety. 4 Aubry & Rau p 167; 12 Baudry - Lacantinerie p 620; 28 Demolombe §48 p 41; 12 Duranton p 313; 17 Laurent p 602 § 619; 14 Merlin p 197 § III; Pothier Oblig No. 567 § 4; 7 Toullier § 173, 179 p 251; 2 Domat p 245; 2 Denisart p 706 §6; 33 Dalloz Rep. Leg. p 454 § 2030; 37 id p 128 § 464.

The debts due by Markel to the matefialmen in this case were secured not only by a Surety but by a privilege upon the contract price and upon the building to be erected. By paying the materialmen, Merkel liberated not only himself but his Surety and the owner's property. He therefore had a preeminent interest in discharging these debts.

The debtor of several debts in the absence of consent to the contrary from him, has therefore the right to have a payment made by him applied in the manner provided by law. 12 Duranton § 196.

To the same effect are Abadie vs Poydras, 6 N. S.,26; and Denis vs Ramouin, 1 R.,319; and Dunlop vs Tarkington, 5 A., 569 and Forstall vs Blanchard, 12 La., 1; N. O. Ins. Co. vs Tio; 15 A., 174, 457; Spiller vs Crs,;16 A., 292; 25 A., 315.

The burden of proof is upon the creditor to show the debtor's consent to the particular imputation made by the creditor. 5 A., 569.

In the Forstall case an imputation made by the creditor to a matured debt on an open account was maintained against a vendor's claim not due. Also 15 A., 457; 10 La., 232.

In Johnson vs Sterling, 3 N. S., 483, the Court credited a note of the defendant bearing ten per cent, interest in preference to an open account due by him, - and said on p 487:

"As no imputation was made at the time of payment by the consent of the debtor, the money must be applied to the obligation he had most interest in discharging". Also 10 La., 357.

In Wicker vs Croghan, 4 N. S., 79, the Court said that the payment on account made by the defendant must be first imputed to the first debt which was secured by a mortgage rather than to the second which was not; and this for two reasons, that the first debt was the most burthensome and was also the oldest, citing Article 156 p 290 of the Code of 1808 which is in the same words as Art. 2162 of the Code of 1825 and Art. 2166 of the Code of 1870.

Although imputation is made in the interest of the debtor, it would seem that third persons in interest, such as sureties and mortgagees, may require the same imputation to be made which the debtor himself might have demanded under Article 2166-, when the debtor himself has not made any imputation. 7 Toullier p 255 185; 1 R., 318; 17 Laurent p 599 614; C. C. 3060 (3029); 104 La., 231; 18 A., 544; 16 A., 292; 15 A., 526; 6 A., 774; 430; 8 A., 874, 520, 24; 6 Rob., 124; 10 La., 356, 352, 932; 6 N. S., 26. 30 Cyc 1251-1252-12 Ct App ns~

The case of Miller vs Steaner, 16 A., 375, cited by counsel for applellant, while apparently sustaining his position, is merely a statement of Articles of the Code and of an opinion of Supreme Court of Maine and of Pothier, but assists him in no manner. The transcript in the Supreme Court No. 6835 shows that the preference claimed by Adams was denied both by the District Court and by the Supreme Court.

But the case of Burbank vs Buhler, 168 La., 39, supports

215

appellant. The facts in that case were as follows. The plain-
tiff held two notes of $5000 each drawn by Joseph Buhler and by
Ernst in solido, secured by a mortgage dated in 1887; Ernst
subsequently assumed to pay these notes; plaintiff also held
three notes of Ernst for $30,000 secured by a mortgage on the
same property dated in 1896; he also held unsecured notes of
Ernst for $15,000; the property mortgaged was insured and the
policies were transferred to plaintiff; the property mortgaged
was destroyed by fire, and the insurance money was paid over by
Ernst to Burbank "without giving him any instructions as to what
particular notes to impute the payment". Burbank imputed the
money to the payment of the second mortgage notes of Ernst of
1896 and to the unsecured notes of Ernst; none of the insurance
money was imputed to the first mortgage of 1887, which apparantly
remained due in its entirety. Burbank then foreclosed on the two
first mortgage notes of $5000 each; the property mortgaged was
sold by the Sheriff, for an amount insufficient to pay both notes;
there was a balance due of $3679.74. Joseph Buhler died prior
to the Sheriff's sale, and the defendant, Christine Buhler, his
child and heir, was sought to be held liable for that balance in
those proceedings. The District Court decided that the plaintiff,
under Article C. C., 2166, should have applied the insurance mo-
ney received by him to the payment of the first two mortgage
notes of $5000 each dated in 1887 rather than to the second mort-
gage and unsecured notes; and, considering that done which the
law declared should have been done, it decreed the first two
mortgage notes paid. The Supreme Court affirmed the judgment -
upon the ground that the policies of insurance had been trans-
ferred as collaterals to Burbank, and that he had no right to di-
vert the proceeds. In the course of its opinion the Court said:

> ". . . It is very true that there are cases wherein
> it has been held that an imputation of payment made
> between a creditor and his debtor is not subject to
> the control of third persons, or even of parties more
> or less concerned in the resulting situation, but we
> have to deal here with special conditions and circum-
> stances, which call for special examination. The de-
> fendant cannot be classed as a third party to what
> has taken place in this matter, she has been and is so
> connected legally with the plaintiff, and the brothers
> Ernst, as to entitle her to question the validity and
> legality of the action by which her interests have been
> sacrificed. Persons are much more free to act in their

dealings with each other when their own interests alone are to be affected, than they are when the interests of persons other than themselves will be made to suffer. In Griffin vs His Creditors, 6 Rob. 224, this Court said: "We are referred to the rules laid down in the Code for the imputation of payments when two debts are of the same nature and equally onerous. Those rules which are to govern in the settlement of accounts between a debtor and his creditor cannot clearly be enforced to the prejudice of third persons". We find it declared in Dalloz and Verge Codes Annotes, under Art. 1255 C. N. (No. 7); "Les tiers interesses ne sauraient étre lies par l'imputation que le creancier a fait a leur prejudice".

The complete quotation translated is as follows:

". . . Article 1255 (C. C. 2165) controls only the relations between the debtor and creditor, as regards imputation; this results from the text itself. As concerns interested third parties, they cannot be bound by the imputation made by the creditor to their prejudice". 33 Dalloz Rep. Leg. p 452 § 2024.

In the case before us no imputation had been made by the debtor, and it does not appear that he had consented to the imputation made by the creditor, or that the creditor had informed him of the imputation he had made, or that he was aware of it. Therefore the debtor and his surety have a right to demand the imputation provided by law. 12 Duranton § 196.

It does not appear by the record that the claims to which the materialmen imputed the payments made to them by Markel were secured by privilege or surety or that Markel had an equal or greater interest to discharge them than the debts due for this building, and the burden of proof was upon the materialmen.

The following materialmen had only one account with Markel and received no payments on account, and are, therefore, not affected by the rules of imputation, viz:-

| | |
|---|---|
| John H. Gaignard, | $185.00 |
| Miller-Goll Co., | 380.82 |
| Jos. B. Crasto, | 34.00 |
| | $599.82 |

The following materialmen had a running account with Markel, viz:

Davoe & Raynolds. Between March 8th., and June 30th., 1917, they received payments largely in excess of their claim herein. The payments must be imputed to this claim which is

217

thereby extinguished.

George H. Haindel has received $90 on account of three jobs. His claim should be reduced from $215 to $125.

The Salmen Brick & Lumber Co. sold their materials for $33.50 on March 9th., 10th. and 17th.; on April 5 they received on account $100. Their bill must be considered paid.

Harry Scheibe received between March 9th. and June 23d. an amount far in excess of his claim. It should be rejected.

The same must be said of the Carolina Portland Cement Co. Their claim must also be rejected.

Jordy Bros. furnished their slates to the value of $225, on March 25th. of May 28th.; subsequent to that time they received from Markel payments in excess of that sum; their claim must be rejected.

The Miller-Goll Manufacturing Co. furnished materials to the amount of $380.82 on May 29th., it does not appear that subsequent to that date they received any payments; their claim must be allowed.

J. W. Thompson sold materials from March 3 to April 24th. to the sum of $117.24. From March 24 to July 7th. they received from Markel sums much in excess of that acmount. Their claim must be rejected.

W. W. Carre from March 13th. and thereafter furnished materials to the extent of $543.66. From April 4 to May 26, they received in payment a sum exceeding that amount. Their claim must also be rejected.

We, therefore, hold that the only materialmen who have unpaid claims are the following:

| | |
|---|---|
| Geo. H. Haindell | $ 125.00 |
| John H. Gaignard for | 185.00 |
| Miller-Goll Manfg. Co. | 380.82 |
| Jos. B. Crasto | 34.00 |
| Howard J. Jones | 37.50 |
| Making a total of: | $ 762.32 |

And that, by the application of the law of imputation of payments, the following materialmen have been paid, namely:

| | |
|---|---|
| Devoe & Reynolds | $13.30 |
| Salmen Brick & Lumber Co. | 33.50 |
| Henry Scheibe | 67.25 |
| Carolina Portland Cement Co. | 43.25 |
| Jordy Bros. | 225.00 |
| J. W. Thompson | 117.24 |
| W. W. Cdrre | 543.66 |
| Making a total of | $ 1043.60 |

In coming to this conclusion, we feel that we are giving effect to the equitable principle enforced by us in Roca vs Caruso, 7 Ct. App., 451. In that case we said:

". . . A furnisher of building materials, who knowingly receives from a contractor money earned under one contract, cannot impute such payment to any other account, even though older, as long as the debt incurred in connection with such contract remains unpaid".

In the case before us the materialmen simply applied each payment to the debt longest due.

Although positive knowledge of the source of the money paid to them by Markel is not brought home to the materialmen, they could not *be conscious* feel that when they applied money paid to them in one month to the credit of some old account past due that they were diverting the fund received by them from its legitimate dest ination and from one contract to another.

It is therefore ordered, adjudged, and decreed that the judgment herein, except as regards the compensation allowed the Commissioner, be avoided and reversed; that the claims of the following materialmen be rejected and dismissed at their cost; Devoe and Raynolds, Salmen Brick and Lumber Co., Henry Scheibe, Carolina Portland Cement Company, Jordy Brothers, J. W. Thompson, and W. W. Carre; that there be judgment in favor of the following named materialmen and against the United States Fidelity and Guarantee Company for the following amounts with five per cent. per annum interest from August 31st., 1917, till paid, and all costs of suit by them incurred, subject to a credit of $554.08 deposited by plaintiff in the registry of the Court, viz:George H.Haindell,$145.00; John H,Gaignard,$185.00;Miller-Goll Manufacturying Company,$380.8 2;Joseph

b. Crasto, $34.00 and Howard J. Jones, $35.50; and ordering the said Surety Company to deposit said amount in the registry of the Court for distribution among said parties; it is further ordered that all the inscriptons in favor of the above named twelve materialmen be cancelled and erased from the books of the Recorder of Mortgages.

It is further ordered that Thomas Connell, Clerk of the Civil District Court disburse among the above named five materialmen the amounts already deposited by plaintiff herein and those to be deposited by the Surety Company, all in accordance with this decree, subject to the payment by them of the costs of appeal each for one fifth.

R.C.- per curiam On Rehearing.

CHARLES P. CLAIBORNE, JUDGE.

The argument on rehearing has not changed our interpretation of Article 2166 (2162) of the Civil Code as given by us in our original opinion and to which we adhere. But considering the complaint of counsel for the defeated materialmen that they have been taken by surprise by the application of the law of imputation as made by us and that it is in their power to show that the payments were imputed by them to privileged debts, and believing that the ends of justice will be subserved by furnishing them a full opportunity of so doing.

It is ordered that the judgment of the District Court appealed from and the decree of this Court herein are both reversed and set aside, and that this case be remanded to the District Court to be there tried and decided in accordance with the views expressed in the original opinion herein, with this addition, that the imputations of payment to debts of equal dignity and date shall date shall not be made in proportion to the number of debts but in proportion to the amount of the several claims. 28 Demol p. 45 & 53; 12 Duranton & 194; and that the burden of proof shall lie with the materialmen to show that the imputation by them made was according to law;

It is further ordered that the costs of this appeal be paid by the materialmen.